CLARENCE JERRY COOK and JERRY A. HEFFERMAN, Plaintiffs in Error, v. STATE OF TENNESSEE, Defendant in Error.

466 S.W.2d 530.

Court of Criminal Appeals of Tennessee. Jan. 5, 1971.

Certiorari Denied by Supreme Court March 1, 1971, as to Hefferman.

Certiorari Denied by Supreme Court April 5, 1971, as to Cook.

Gary London Pagels, Hugh Stanton, Joseph L. Mercer and Robert G. Gilder, Memphis, Tenn., for plaintiffs in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Jewett H. Miller and William D. Haynes, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

GALBREATH, Judge.

Clarence Jerry Cook, represented by retained counsel at his trial and here, together with Jerry Hefferman, an indigent represented by the Public Defender, appeal their convictions for armed robbery and resulting sentences of forty-five (45) years in the penitentiary and assign numerous errors to the action of the Shelby County Criminal Court in overruling their motions for new trials. A third defendant, Danny Ray Hopper, negotiated a settlement on pleas of guilty and was sentenced to three years confinement.

A number of the assignments assail the sufficiency of the evidence. They are overruled. Convincing eyewitness testimony supported the findings of the jury that on the 3rd of October, 1969, shortly before the closing time, the plaintiffs in error, defendants below, rushed into Normal Drug Store near Memphis State University in Memphis and under the threat of pistols forced the manager, a Mr. Larry J. Parker, two female clerks, and two female customers to the rear of the store where they were all locked in the ladies rest room. Later the bandits took Mr. Parker from the rest room and forced him to

open two safes from which they took a quantity of money which, along with a quantity of drugs, they dumped into a pillow case. After binding and gagging the manager, they fled through the rear door of the store. When arrested the next day the defendants were in possession of a pillow case, money and drugs such as were taken from the store.

Under the factual situation described there is no doubt that the defendants have failed to carry their burden on appeal to demonstrate that the evidence preponderates against the verdict. See McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

■■ An assignment complaining that Mr. Parker was allowed to testify as to the amount of money located in the safes when he admitted he had no personal knowledge of the exact sums has no merit. Mr. Parker was quite positive that substantial sums of money and drugs were stolen, and the value of the property taken by placing the person assaulted in fear is not a gravamen of the offense. The gist of the offense of robbery consists in taking property of value from the person of another by force or intimidation, and the value of the property taken is immaterial.

The morning following the robbery the defendants were arrested in a car driven by the non-appealing defendant after a high speed chase that was prompted by efforts to elude members of the Sheriff's patrol who noticed that the vehicle in which the three were riding had no license tags on its front and rear. After a chase during which speeds of approximately 100 miles per hour were reached, the driver of the car in which the defendants

were lost control, and the officers approached the halted vehicle with pistols drawn. The defendants got out of the car and the officers placed them under arrest and searched them for weapons. While doing so the officers observed, through the open doors of the automobile, syringes and bottles of the type drugs are packaged in and the pillow case which, on inspection, was found to contain money and what appeared to be prescription drugs. The next day the two defendants appealing here were placed in a line up and identified by witnesses who had been in the drug store when it was robbed as the bandits. Appropriate assignments of error challenge the legality of the arrest, search, and line up procedure.

■ ■ The arrest, in view of the serious traffic violations witnessed by the officers, was most reasonable; it would have been most unreasonable not to have arrested the driver under the circumstances. Following the arrest officers observed without a search what plainly appeared to them to be drugs, and the resulting seizure was also reasonable since they had probable cause to believe the possession of such obvious contraband involved a violation of the criminal laws. Once they had this probable cause a full scale search of the automobile was justified without a warrant as incident to a lawful arrest. A detailed review of the law of search and seizure as it pertains to automobiles both on the highway and in police custody may be found in the recent United States Supreme Court decision of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, which hold that even after the automobile has been impounded and the occupants jailed it may be searched if at the time of the arrest a valid search incident thereto could have been made.

We need not go that far however in this case but may rely on the authority of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, which holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. In such instances the highest court has ruled an immediate search is constitutionally permissible. See Chambers v. Maroney, 90 S.Ct. at 1981. The State further contends, and we agree, that if the officers could see the property seized and in view of the public, there was actually no search involved. See Raynor v. State, Tenn.Cr.App., 447 S.W.2d 391.

■ From the record before us the line up complained of seems to have been conducted with all of the safeguards outlined in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. Both the defendants were advised of their right to have counsel attend and observe the line up and both requested that counsel of their choice be notified, Mr. J. Fred Freidman of the Shelby County Bar for Cook and Mr. Cordell Hull Sloan for Hefferman. For some reason not apparent in the record Mr. Sloan did not attend, but Mr. Freidman did and discussed with Hefferman the fact that Mr. Sloan was not present. Mr. Freidman said he did not represent Hefferman at the line up but that he did observe everything that went on on behalf of Cook at the same time Hefferman was exhibited to the witnesses. No one contends that anything improper or unfair occurred that would taint the line up identifications.

■ Officers conducting the line up thought Mr.

Freidman was representing both defendants at the time. Sloan made no objection to proceeding after he conferred with Mr. Freidman. Whether Mr. Freidman was retained or requested to represent Hefferman at the line up he was there in a representative capacity for one with exactly the same interests as Hefferman, and it must be assumed that whatever inhibiting effect his presence had on the police to insure against unfair suggestions in aid of identification inured to the benefit of both subjects equally. It is strongly suggested in *Wade* that when one's own counsel cannot attend a line up another lawyer may substitute for him. In footnote 27 Mr. Justice Brennan says:

> "Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel." United States v. Wade, 87 S.Ct. at 1938.

All the assignments relative to the arrest, search and seizure, and the line up are overruled.

Error is assigned in that all of the witnesses testifying for the State did not have their names indorsed on the indictment while some who did were not called as witnesses. T.C.A. § 40-2407 provides:

> "It shall be the duty of the district attorney to indorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as he intends shall be summoned in the cause, and sign his name thereto."

A number of key witnesses' names were left off the indictment. Among them were the two young ladies who were customers in the drug store at the time of the robbery and another young lady who was a clerk at the store, together comprising a majority of the five eyewitnesses. Deputy Sheriff John Hall who chased down and arrested the defendants the day after the robbery, certainly one of the most important witnesses called to testify, was not listed. Neither was his superior, Lt. W. A. Crossnoe, who was called to the arrest scene as head of the narcotics squad; nor was Mrs. Tommy Matthews who conducted the chemical analysis at Memphis State University that scientifically identified the substances seized following the defendants' arrest as Class A narcotics and amphetamines.

Why the District Attorney General of the largest metropolitan area in the State did not see to it that the statute requiring the witnesses' names to be listed on the indictment was complied with does not appear. Our Supreme Court, and others, have held this statute to be directive, not mandatory, it is true; and the trial court may allow witnesses to testify for the State whose names are left off the indictment in his discretion. See Douglass v. State, 213 Tenn. 643, 378 S.W.2d 749. The purpose and reason behind the statute is "to make known to the defendant the names of such witnesses who will be called to testify so that the defendant will not be surprised and handicapped in the preparation of his case." McBee v. State, 213 Tenn. 15, 372 S.W.2d 173. There is no contention in this case that the defendants were surprised or handicapped in the preparation of their defenses so no reversible error is involved, but we would not hesitate to

reverse if it did appear that the names were left off for the successful purpose of inhibiting the defense. It is evident that counsel for the defendants knew the names of the eyewitnesses and arresting officers, so in this case no harm was done; but it would be well not to jeopardize otherwise successful prosecutions by taking the unnecessary risk of non-compliance with a statute so easy to comply with:

> "These matters are addressed to the sound discretion of the trial court, but we think it would be a clear abuse of discretion such as would entitle the defendant to a new trial for the trial court to permit the county attorney to withhold the names of important witnesses until the case is called for trial, and then refuse a continuance in order to permit the person on trial to be able to meet the testimony of the witnesses so indorsed, if a reasonable showing is made that he could be able to have such testimony or such witnesses. Common fairness would not permit a practice of this kind." Nelson v. State, 5 Okl.Cr. 368, 114 P. 1124.

> "The statute * * * requires that the names of all material witnesses must be indorsed on the indictment. But it [unlike the Tennessee statute] also says that other witnesses may be used by the state. This does not mean that the state may purposely refrain from so indorsing the names of its witnesses and call them as a surprise to the defendant, and the practice of waiting until the case is called for trial to make such indorsement is not to be commended." State v. Lindsey, Mo., 80 S.W.2d 123.

 No suggestion of error was presented by

the State's failure to use all of the witnesses listed on the indictment. They were all tendered to the defense who was free to call them or not. The fact that one or more of them refused to discuss the facts within their knowledge with the attorneys for the defendants so that the exact nature of their prospective testimony was not known to them is immaterial. We have no criminal discovery procedure in this State, and the only method to examine a witness in the absence of cooperation is to interrogate him under oath during trial. If the subpoenaing party does not use the witness, he is available to the other party who may adopt him as his own witness.

We find no impropriety in the manner in which the drugs were tested by the expert witness, Mrs. Tommy Matthews. There is no showing that "the chain of evidence" was broken, as alleged by the plaintiffs in error, the drugs having been delivered to the toxicology department at the University for testing by a Sergeant Clifford Ballard of the Sheriff's narcotic squad who obtained them from the officer who seized them from the defendants and picked up and returned by him after the tests were conducted.

We have carefully read the voluminous record and considered all of the assignments of error. Having done so we affirm the judgment of the trial court.

OLIVER and MITCHELL, JJ., concur.