James William BISHOP, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 24, 1979.

Certiorari Denied by Supreme Court
May 7, 1979.

Robert T. Rochelle and Ernest W. Cotten, Lebanon, for appellant.

Brooks McLemore, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, R. David Allen, Asst. Dist. Atty. Gen., Lebanon, for appellee.

## OPINION

O'BRIEN, Judge.

Defendant was convicted of second degree murder with punishment fixed at sixty (60) years in the penitentiary and for grand larceny for which he was sentenced to serve not less than six (6) years nor more than ten (10) years.

The victim of the homicide was a seventy-three-year-old widow who lived some-what as a recluse in a two-story dwelling in Lebanon, Tennessee. The upper story of the dwelling had been converted into an apartment for rental purposes. She had a stepson who communicated with her by telephone two or three times a week and visited her occasionally to see about her needs. On the morning of August 26, 1976, the stepson Franklin Gill called by telephone and received no response. As a result he went to her residence to check on her. Finding the door locked he gained entrance by going up an outer stairway to the upstairs apartment and found that door unlocked and open. The room was in disarray with various items scattered about including a skirt and slip which he identified as belonging to his stepmother. Descending the inside stairway he found the lifeless body of Mrs. Gill lying on her bed and reported to the police. Subsequently her spectacles were found under an article of furniture in the upstairs room. Two buttons which proved to be missing from her blouse were also found on the floor in that room. Several articles of jewelry including a diamond wedding band set and a Bulova watch were among the articles missing from the home. Police officers investigating the homicide found beside the nude body a pillow with a marked indentation stained with blood and mucus. The victim's blouse was wrapped around her neck. Pathological examination disclosed the cause of death to be asphyxia resulting from smothering or suffocation. The time of death was fixed at sometime between eighteen hours and thirty hours prior to the pathologist's examination which was conducted at 04:30 p. m. on August 26th. Investigation led to defendant. The victim's gold watch was found in an automobile owned by him. The rings were recovered from a pawn shop where he had disposed of them. Between 11 and 12 o'clock a. m. on Wednesday, August 25th, he had been observed by a neighbor going up the outer stairway with Mrs. Gill. The witness, who customarily saw Mrs. Gill working about her yard in the afternoons, did not see her alive after that time. The husband of this

witness had seen a green '65 Chevrolet automobile, resembling one owned by defendant, parked at the victim's house two or three days before her death. The description he gave of the driver matched that of defendant. Another witness, an attorney with an office adjacent to the dwelling of the victim, testified that a man fitting the description of the defendant was at the residence in the latter part of July or the first part of August, 1976.

■■■■ The first assignment relates to the indictment. Defendant argues that a motion to dismiss the indictment should have been sustained because the names of the witnesses to be summoned in the case were not endorsed on it by the attorney general, and it was not signed by him in accordance with the statute. (T.C.A. Sec. 40–2407). It is argued that this statute is mandatory and the indictment was fatally deficient for the reasons stated. At the conclusion of a pretrial hearing the trial judge ruled there was nothing wrong with the indictment. The Technical Record contains separate indictments for each charge. Our examination indicates they were not deficient in any manner. Insofar as the issue here is concerned the State witnesses were listed on the front of the indictments, as was the typed name of the attorney general pro tem whose signature appears on the second page. This complies with the statute which is directory and not mandatory. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963); *Arrington v. State,* 548 S.W.2d 319 (Tenn. Cr.App.1976). The purpose of this statute is to make known to the defendant the names of witnesses who will be called to testify so that he will not be surprised and handicapped in the preparation of his case. *McBee v. State,* supra. Defendant has not shown that he was prejudiced in any manner by any technical noncompliance with the statute. We overrule the assignment.

■■ Defendant says he was denied due process and the right to effective assistance of counsel because a document he categorizes as a confidential communication between him and his counsel was seized from his jail cell. On March 21, 1977, prior to his trial on May 2nd, while defendant was incarcerated in Wilson County Jail, a jail break was attempted by other inmates in the cell. This brought about a search in which, among other things, a document prepared by defendant was seized by sheriff's deputies. The instrument was a day by day account of defendant's actions for several days prior and subsequent to the date of the homicide. He claimed this was prepared at the request of his attorney for use in his defense. Copies were made and turned over to investigating officers. The original was turned over to his attorney on the 28th day of March, approximately one week after it was taken from his cell. It was defendant's argument that any effort to establish an alibi defense had been prejudiced by disclosure of the contents of the document to the investigating officers and the district attorney general. The trial judge declined to allow the State to admit the document into evidence on direct examination, but subsequently allowed its use for cross-examination of the defendant. We find no fault with that judgment. It is conceded that the authorities had the right to search the cell after the attempted escape came to their attention. Certainly they had a right to examine whatever may have been found there. There was no indication in the paper writing that it was a confidential instrument of any nature. It was not essential for the court to read the document in question to rule on the legality of the seizure or its temporary retention by the authorities. At the hearing defendant proposed to introduce witnesses to show that the officers made copies of the instrument before turning it over to his attorney. The court did not question that fact. Defendant does not show in what manner he was prejudiced. The document was not addressed to anyone. It was unsigned. It was not incriminating in any sense other than it indicated defendant had been to the victim's home prior to the homicide and contained reference to some jewelry purportedly purchased from a stranger. These were matters which he testified to at trial. Defendant was not inhibited in his alibi defense. Under current procedure, upon

demand made, a defendant is required to give notice of an alibi defense specifying the place or places which he claims to have been at the time together with the name and addresses of witnesses upon whom he intends to rely to establish the defense. (Rule 12.1, Tennessee Rules of Criminal Procedure, effective July 13, 1978). We overrule the assignment.

Defendant objected to denial of a motion to suppress evidence obtained as a result of a search of his residence and automobile. He cites various grounds to support the invalidity of the warrant including the charge that the search was based upon statements obtained from his wife and that this was a privileged communication.

▬▬▬ Insofar as the search warrant and the affidavit to the search warrant are concerned we note first of all that no part of the search warrant is included in the Bill of Exceptions. It has been settled law in this State for many years that a search warrant is evidence and, like any other evidence, it must be included as part of the Bill of Exceptions before it can be considered on appellate review. *Chico v. State,* 217 Tenn. 19, 394 S.W.2d 648 (1965). However, based on the evidence contained in the Bill of Exceptions we find nothing fallible about the ruling of the trial judge on the hearing to suppress evidence. He held that the warrant met all the requirements under the law for its issuance and execution. He considered all of the eight grounds set out in the motion to suppress and overruled each. We concur in those findings. The return of the officer on the warrant has been attacked. The law is clear that any irregularities in the method of returning a search warrant do not affect the right to make a search and do not affect the admissibility of evidence acquired as a result of it. See *Bragg v. State,* 155 Tenn. 20, 290 S.W. 1 (1927); *State v. Calvert,* 219 Tenn. 534, 410 S.W.2d 907 (1966). Complaint is made . that the issuing magistrate who signed the search warrant had formed an opinion in regard to the guilt of defendant because of the language used in finding probable cause. This assertion is not sup-

ported by the record or by any citation of authority. We find no merit in the assignment. We also overrule defendant's assignments contending the information obtained from Mrs. Bishop by the investigating officers was a privileged communication. In *Clark v. State,* 159 Tenn. 507, 19 S.W.2d 228 (1929), it was made clear that a wife's incompetency as a witness against her husband did not bar the testimony of strangers to the marital union because the facts related in their testimony were discovered by them as the result of extrajudicial and voluntary disclosures of the wife. This is sound law particularly applicable to the facts in this case. The officers did no more than utilize the information obtained from Ms. Bishop in continuing their investigation of the crime.

▬▬▬ Complaint is made about the testimony of a rebuttal witness whose name had not been endorsed on the indictment nor sequestered during trial. The witness in question was called by the State for direct examination. The district attorney general informed the court that he had only learned a few minutes earlier of the materiality of the testimony the witness might give. After a jury-out hearing the trial judge refused to allow the testimony of this witness on direct examination. At the close of the defense proof the witness was introduced, without objection, in rebuttal. He testified that some time prior to the homicide he had seen defendant walking in the yard of the Gill house. The testimony did no more than corroborate defendant's own admission that he had been to the victim's house on three occasions prior to her death. Although the office of rebuttal testimony is not corroboration of defense evidence, this testimony could not have in any way prejudiced the defendant. The assignment is overruled. See *Cook v. State,* 3 Tenn.Cr.App. 685, 466 S.W.2d 530 (1971).

▬▬▬ Defendant assigns error to the admission of the testimony of a State's witness on the premise that she had made prior contradictory statements at a preliminary hearing relative to the identity of defendant and because her identification was

tainted by the fact that she first identified the defendant by use of a single picture in a local newspaper.

Mrs. Ponder testified she saw defendant on the outer stair landing on the second floor of the Gill home on August 25, 1976, the day before Mrs. Gill's body was discovered. It was her further testimony·that several days later she saw a picture in a local newspaper which resembled the person she had seen at the Gill residence. She was positive of her in-court identification of defendant as the person whom she saw at the Gill residence and whose picture she observed in the newspaper. There was no State action involved in Mrs. Ponder's identification of defendant from the newspaper picture and her subsequent report to the police. The safeguard of the exclusionary rule in such matters does not apply to the activities of private citizens. See *Ennis v. State,* 549 S.W.2d 380 (Tenn.Cr.App.1976). We have read the record and do not agree that this witness made a prior contradictory statement at the preliminary hearing although the record indicates she was less positive in her identification. Her testimony ·was admissible and entitled to such weight as the jury might give to it.

Defendant said the State failed to prove the guilt of defendant beyond a reasonable doubt.

The evidence summarized was ample to warrant the verdict of the jury. It is not the function of the appellate courts to reweigh evidence adduced at a criminal trial; a guilty verdict, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978).

Defendant attributes error to the closing argument of the State's counsel which he charges was unduly prejudicial and inflammatory.

Inflammatory argument by counsel is never to be condoned, and should be avoided at all costs by the prosecutor. His reference to the defendant as an animal, and a similar remark cited, is certainly not commendable. The other reference made in the brief, categorized as a comment upon the defendant's right to refuse to answer questions while in jail, was an indelicate reference to cross-examination by defense counsel regarding the cooperative attitude of defendant with the authorities. In view of the mass evidence implicating defendant in the crime, the impact of any comments made by State's counsel in closing argument was minimal and could not have affected the outcome of the trial. See *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965). We overrule the assignment.

The judgment of the trial court is affirmed.

DUNCAN and DAUGHTREY, JJ., concur.