IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session

## STATE OF TENNESSEE v. BRADDIE ERIC SULLIVAN

**Extraordinary Appeal from the Circuit Court for Lincoln County**
**No. S0400074     James L. Weatherford, Judge, Sitting by Designation**

---

**No. M2004-01480-CCA-R10-CD - Filed January 27, 2005**

---

The state was granted an extraordinary appeal pursuant to Rule 10, T.R.A.P., to challenge the Lincoln County Circuit Court's denying its motion to use statements made by the defendant, Braddie Eric Sullivan, to his attorney for impeachment purposes in his first degree murder and especially aggravated robbery trial. We affirm the trial court's denial of the state's motion.

**Tenn. R. App. P. 10; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Clement Dale Potter, District Attorney General; and Larry G. Bryant, Assistant District Attorney General, for the appellant, State of Tennessee.

Lisa Zavogiannis, McMinnville, Tennessee, for the appellee, Braddie Eric Sullivan.

### OPINION

The defendant is charged with robbing and murdering Louie B. Johnson in May 2000. The defendant was convicted in an earlier trial, but the trial court granted a new trial because of a claimed violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), relative to undisclosed evidence.

This appeal relates to the defendant's pre-trial statements to his appointed attorney in the Warren County Jail on May 21, 2000, that were overheard by a police officer who increased the volume of the audio component of a video camera located above the defendant and his attorney. The state wants to use the statements for impeachment if the defendant should testify. It contends first, though, that the attorney-client privilege does not cover the statements. It also argues that even if the statements were protected by the privilege, the privilege should not bar their use for impeaching the defendant. The defendant initially responds that the state's appeal is premature because the trial court never ruled on the state's motion.

The record on appeal contains a transcript of a hearing at which the state presented three witnesses. Anita Youngblood, a correctional officer with the Warren County Sheriff's Office, testified that she was working on the day the defendant's attorney arrived at the jail. She said the jail was short-staffed when he arrived because it was lunchtime. She said she offered the attorney use of the chapel to meet with the defendant. She said she told him she could lock the doors and look for someone to guard them. She said that the attorney refused because he did not want to be alone in the chapel with the defendant and that she offered him the booking room where most attorneys meet with their clients. She said the booking room was also called the "holding" area, and it had a bench located approximately six to seven feet from where the defendant and his attorney were talking. She said that on May 31, 2000, a prisoner was sitting on the bench. She said that the dispatch room had glass walls and that one could see the dispatcher as well as the monitors and other equipment. She said that video cameras are located throughout the jail but that the video camera in the chapel had no audio component.

During cross-examination, Ms. Youngblood testified that the chapel was no longer available for attorney-client meetings. She said that most meetings took place in the holding room or an area designated for "visiting" and that both locations had video cameras in them. She said she did not inform the attorney that his conversation could be overheard, and she did not know whether the defendant's attorney was aware that the camera over his table had audio capability. She said that the person on the bench was sitting eight to nine feet from the defendant and that he was there before the attorney and the defendant arrived, which was the reason she offered them the chapel.

Thomas Arthur, the person who was sitting on the bench in the booking area during the defendant's meeting with his attorney, testified that he turned himself in to make bond because his ex-wife had obtained warrants for him. He said he was at the jail for approximately four hours that day. He said he recalled that an attorney met with his client in the same room and that he could hear their conversation but he "couldn't tell [the court] what they said." The record reflects that Mr. Arthur also testified that he recalled "one thing that was said," but did not "even know what was said, but [he] thought it was stupid to say on account of all these places you would think would be recorded or whatever." Regarding the defendant's alleged "stupid" comment, Mr. Arthur said that he did not have "any idea what it was." Mr. Arthur further testified he did not recall who the attorney was or who the client was, but he recalled the time was approximately 12:00 or 1:00 p.m.

Lieutenant Jody Cavanaugh testified that he had worked for the Warren County Sheriff's Office as a police officer for eighteen years. He said that he was in the jail's dispatch office on the day the defendant and his attorney met in the holding area and that he heard their conversation. He said that the two men were sitting at the table outside the dispatch office and that a camera with an audio feed was directly above them. He said he heard the attorney begin to advise the defendant that he had been appointed to represent him. He said he heard the defendant respond, "I did it, but I didn't mean to do it."

On cross-examination, Lt. Cavanaugh said that because the volume was low, he turned it up on the monitoring device just before the attorney informed the defendant that he had been appointed

to represent him. He admitted he did not inform the defendant's attorney that he could or did listen to their conversation. He said he did not consider the conversation confidential because it took place in the holding area where jail personnel, inmates, and other people could walk through the room. The trial court asked Lt. Cavanaugh whether an officer in the dispatch room could hear what was said in the booking room without the benefit of the audio monitoring device, and he replied "you can at times if people are speaking loud enough . . . ."

Joyce Carter, a clerk for the Warren County Sheriff's Office, testified that she was in the dispatch room when the defendant and his attorney met in the holding room and that they were the only persons in the holding room at the time. Ms. Carter then read the following excerpt from a statement she made on that day:

> While [the attorney] and [the defendant] were talking, Jody Cavanaugh came through. He came in the dispatch office and turned the volume on the camera up that is in the booking area. I could hear their voices, but couldn't make out what was being said. Teresa was talking on the phone and there was other noises in the dispatch office. I asked Jody if [the defendant] said what I thought I heard him say, which was I was there. Jody was listening to him talk and said he would tell us later . . . .

At the conclusion of the hearing, the trial court observed that the issue whether to suppress the defendant's statement had been argued before and that nothing had changed, with the exception of Thomas Arthur's testimony which the trial court determined "doesn't mean a thing." The trial court stated it was "not inclined to grant a Rule 9 appeal at this stage" and, with regard to the defendant's statement, it "would not allow it, as [the court] stated before, under any way, shape, form, or fashion . . . the attorney/client privilege communication is too sacred to play with it like that, and I wouldn't do it." The trial court said it would "sign an order that [it] would not let [the state] use that to impeach him if he took the witness stand" but, later, the trial court said, "if he takes the stand, like I say, I want to know [if the defendant and his attorney knew that anyone else was in the room], if that is possible. I will rule on that then."

Relative to the appeal being premature, we note two deficiencies in the record. First, no written order from which the state has appealed is in the record. Although the state asserted in its Rule 10 application that an order would be forthcoming, it was not. The trial court's statements at the hearing do not reflect a definitive ruling. Second, the trial court referred to a prior ruling and proceeding, and defense counsel referred to the state's motion to use the statements as seeking a "reopening" and a new ruling from the trial court. However, no transcript of any prior proceeding is in the record on appeal. In this regard, what is telling about the hearing in the record is that neither the defendant nor his former appointed attorney testified. In fact, neither one attended the hearing. Obviously, the trial court was interested in learning their views of the events at the jail given Mr. Arthur's testimony.

We also note that the state's application sought relief only from the trial court's order barring use of the defendant's statements for impeachment purposes, and this court granted the application regarding that issue. Now, however, the state is essentially attacking the underlying ruling that the defendant's statements were privileged attorney-client communications. We, like the trial court, are reluctant to consider the matter fully without evidence from the defendant and his former attorney. In any event, the trial court found that Mr. Arthur's testimony, by itself, did not affect its prior ruling barring use of the privileged communications. We are not in a position to disagree with that ruling given the record before us.

Relative to the defendant's privileged statements, we do not believe that the state may impeach the defendant with them if he testifies. The state cites Bryan v. State, 848 S.W.2d 72 (Tenn. Crim. App. 1992), and asserts that the attorney-client privilege is not absolute. In Bryan, the petitioner sought post-conviction relief from felony convictions, claiming his guilty pleas were not knowingly, understandingly, and voluntarily entered. The state sought to have the petitioner's trial attorney testify regarding what he told the petitioner about his constitutional rights and the ramifications thereon of his guilty pleas. This court found an implied waiver of the attorney-client privilege to the extent necessary for the state to rebut the petitioner's claimed ignorance. In doing so, this court adopted the following conditions for implied waiver found in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975):

> (1) assertion of the privilege was a result of some affirmative act by the asserting party, such as filing suit;
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
> (3) application of the privilege would have denied the opposing party access to information vital to its defense.

848 S.W.2d at 81. The conditions existing in Bryan are not in the present case. Bryan avails the state nothing regarding the use of improperly obtained privileged attorney-client communications.

The record reflects that at the time of the interview, the defendant's attorney had been appointed to represent him on the charges involved in this case. These circumstances lend themselves more appropriately to those reflected in Bishop v. State, 582 S.W.2d 86 (Tenn. Crim. App. 1979), a second degree murder case in which the defendant's attorney had asked the defendant to draft a statement while he was in jail detailing his actions during the period of time relevant to the case for trial preparation purposes. Later, other inmates attempted a jail break which resulted in a search of the various cells. The defendant's draft statement was seized by Sheriff's deputies, who made copies and gave them to investigating officers. The state sought to introduce the document as evidence. The trial court refused to allow its use as direct evidence, but permitted the state to use it to impeach the defendant during cross-examination. In affirming his conviction, this court did not directly address the use of the statement but stated that the defendant did not show any prejudice. Id. at 89. The defendant then sought habeas corpus relief in federal court. The Sixth Circuit Court of Appeals affirmed the district court's grant of relief. Bishop v. Rose, 701 F.2d 1150, 1155 (6th

Cir. 1983). First, it noted that this court did not make a determination on the critical issue concerning the state's interference with the attorney-client relationship. It stated that the state's use of the document to impeach the petitioner benefitted the prosecution to the substantial detriment of the petitioner. It concluded that "when the prosecution gets evidence before the jury which is based on confidential communications between the defendant and his attorney it also impinges on the Sixth Amendment right to counsel." Id. at 1157. The court also concluded that the prosecutor's use of the document to attack the petitioner's credibility, a critical issue in the circumstantial evidence case, prejudiced the petitioner. Other jurisdictions have precluded use of privileged attorney-client communications for impeachment purposes. See, e.g., People v. Knippenberg, 362 N.E.2d 681 (Ill. 1977); Ates v. State, 21 S.W.3d 384 (Tex. Ct. App. 2000).

In the present case, the defendant was talking with his attorney who had been appointed to represent him on the charges in this case. Given the trial court's ruling regarding the privileged nature of the conversation, Lieutenant Cavanaugh's listening to it by turning up the volume on a monitoring device was an improper interception of a privileged communication. We conclude that any use of the defendant's statements made during the communication would violate the defendant's Sixth Amendment right to the assistance of counsel and render a trial fundamentally unfair.

Based upon the foregoing and the record as a whole, we affirm the trial court's judgment.

_____
JOSEPH M. TIPTON, JUDGE