IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2009

**COURTNEY MEANS V. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 03-05190; 92; 94     James M. Lammey, Jr., Judge**

_____

**No. W2008-01039-CCA-R3-PC  - Filed June 21, 2010**

_____

Petitioner, Courtney Means, appeals the dismissal of his petition for post-conviction relief in which he alleged that his trial counsel rendered ineffective assistance of counsel. Specifically, Petitioner contends that (1) the search of his car and seizure of a gun was unconstitutional; (2) counsel failed to file a motion to suppress the victim's identification; (3) counsel failed to file a motion to suppress his statement to police; and (4) the introduction of a gun into evidence with a different serial number than the gun that was found in his vehicle violated his due process rights. After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which J. C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Courtney Means.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of eight counts of aggravated robbery, all Class B felonies. This was based on three separate incidents involving four victims. The

trial court then merged the counts involving the same victim leaving four remaining convictions, and Petitioner was ultimately sentenced to an effective eighteen-year sentence in the Department of Correction. On appeal, this Court affirmed the convictions and sentence. *State v. Courtney Means*, No. W2004-01446-CCA-R3-CD, 2005 WL 1323260 (Tenn. Crim. App. June.3, 2005)(app. denied Dec. 5, 2005). The facts surrounding Petitioner's convictions were summarized by this Court on direct appeal as follows:

> All four robbery victims were robbed at gunpoint in the driveways or carports of their Memphis homes during the Christmas holiday shopping season of December 2002. At the defendant's May 3, 2004, trial, the first robbery victim, sixty-three-year-old Carolyn Fredrickson, testified she was loading three dogs into her car at about 3:00 p.m. on December 18, 2002, when she noticed a burgundy, square-looking vehicle with a drive-out tag in the rear window pull up on the street outside her home and a young man run across her yard. Assuming he was coming to sell her something, she continued placing the dogs into her car. When she raised up, the young man was holding a silver handgun against her neck and demanding her purse. After she handed it to him, he ran back to the waiting vehicle and got in the passenger side and the driver sped away. Approximately one month later, Fredrickson identified the defendant as the armed robber by picking his photograph out of a photographic array at the police department. She also made a positive courtroom identification of the defendant as her assailant and identified a photograph of the defendant's vehicle as similar in appearance to the getaway vehicle used in the robbery.
>
> The second and third victims, husband and wife Robert and Sara Alice Hill, were robbed in their open garage at approximately 2:30 p.m. on December 22, 2002. At trial, eighty-two-year-old Robert Hill testified he and his wife were unloading Christmas packages from the trunk of their vehicle when a man came up behind him, placed a shiny automatic pistol against his face, and demanded his wallet, his wife's purse, and their car keys. Hill said the gunman threatened to shoot them if they did not comply with his demands. He testified that after they had handed the items over, the man threw the car keys down at the gate and ran to a waiting car, which was driven by another man. Hill described the getaway vehicle as a maroon or dark red Mercury or Chevrolet with a drive-out tag in the rear window, and he agreed it was very similar in appearance to the photograph of the defendant's vehicle.
>
> Later that same afternoon, Robert Hollie was robbed in the carport of his home by a young man with a silver pistol who fled in a similar-looking vehicle.

Hollie, who was sixty-four years old at the time of trial, testified he was unlocking the door to his house at approximately 4:30 p.m. when a young man ran up, pointed a silver gun at his head, and shouted, "Get in the house or I'll shoot." Knowing that his wife was inside the house, Hollie began grappling with the gunman for the weapon. As he struggled, he ended up on his knees but still managed to retain his grip on the weapon and the gunman. At that point, however, a second man ran up and kicked him in the face and shoulder, breaking his nose. Hollie testified that when the second man began to kick him a third time, he grabbed the second man's leg and the gunman was able to break away. He said the gunman took his wallet, and both men fled to a burgundy vehicle with a drive-out tag in the rear window and a luggage rack on the trunk. Hollie was unable to identify the robbers but, like Hill, agreed that the getaway vehicle was similar in appearance to the photograph of the defendant's vehicle.

On January 15, 2003, police officers were dispatched to a Memphis check cashing business in response to a report that someone was attempting to cash a stolen check. When they arrived, they found the defendant in the driver's seat of his maroon Oldsmobile Cutlass, which had a drive-out tag in the rear window and a luggage rack on the trunk. In the subsequent search of the defendant's vehicle, the officers discovered a chrome nine-millimeter, semi-automatic weapon hidden beneath the carpet behind the vehicle's brake pedal. The defendant initially denied any involvement in the crimes but eventually issued three statements in which he detailed his participation in the robberies.

The trial court applied four enhancement and no mitigating factors to sentence the defendant to nine years for each of his four aggravated robbery convictions. Finding that the defendant qualified as a dangerous offender, the trial court ordered that he serve two of the nine-year sentences consecutively, for an effective eighteen-year sentence in the Department of Correction. Thereafter, the defendant filed a timely appeal to this court, challenging the trial court's sentencing determinations.

*Means*, 2004 WL 1323260, at *1-2.

## II. Post-Conviction Hearing

Concerning Petitioner's arrest, trial counsel testified that police were called to a check cashing business because someone was attempting to cash stolen checks. An undercover officer responded to the call, and two females were ultimately arrested inside the business.

-3-

While there, the officer saw Petitioner in a car fitting the description of a vehicle involved in several robberies that had recently occurred. On cross-examination, trial counsel testified that the car was a distinct, maroon, "boxey" vehicle with a luggage rack and a drive-out tag. When the officer approached the vehicle and asked Petitioner to step out, he saw the pistol grip of a weapon. Trial counsel agreed that the officer was well within his right to ask Petitioner to get out of the vehicle, place him in custody, and search the car.

Trial counsel testified that Petitioner made three statements to police. The written statements contained the following language: "Courtney Means you are under arrest and may be - - and it's got a slash - - will be charged with aggravated robbery in connection with the complaint." He thought that police had probable cause to question Petitioner about the robberies at the time of the statements. Trial counsel testified that if he thought "there was a sliver of ground" to suppress the statements, he would have filed a motion to suppress. He said:

> I asked [Petitioner] about any physical, or emotional intimidation, any threats, or promises, or coercions. I also went over with him his educational background, which he told me and I believe it was brought out in the discovery, that he had a 3.8 average at Tech High School. He said that he was not threatened and was not promised anything, nor coerced. That he did give it freely and voluntarily.
>
> In my discussions with him I found him to be a highly, highly intelligent young man and he said that he was not struck, or threatened with any kind of physical harm of any kind and that it was, in fact, all of the statements he gave them were freely and voluntarily given, knowingly, intelligently made and that his explanation for it was, he just needed money
>
> And he also expressed regret about being involved, no question about that.

Trial counsel also testified that Petitioner told him that he was advised of his right "generally at the scene," and he was formally advised when he was brought into the interview room and when the statements were reduced to written form.

Trial counsel testified he was unaware that the serial number of the weapon introduced at trial was different than the serial number of the gun seized by police during the search of Petitioner's car. He said it appeared that two of the numbers were transposed, and had he realized it at trial, he would have addressed it in closing argument. Trial counsel said that everyone at trial testified that the gun was similar to the gun they saw used during the robberies. No one testified that it was the specific gun used to rob them.

In hindsight, trial counsel wished that he had asked Carolyn Fredrickson about her identification of Petitioner. He testified: "But, as I recall the - - I think it was Ms. Fredrickson, had seen a photograph in the newspaper and voluntarily called the police department and said that is "similar" to the person that was responsible, whatever day in December that was." Although the information was in discovery, it was not brought out at trial. Trial counsel testified that Ms. Fredrickson was the only witness who identified Petitioner in court. He said:

> . . . I do recall in my close, as I do in most closes, testifying is the easiest thing in the world for anybody to do in a court of law, is to know who the Defendant is. I told the jurors that I dare say the minute you walked in the courtroom you knew who the accused was, just because of where they are sitting. And the easiest thing in the world to do, in a court of law, is sit in this chair and know who the defendant is and know who to point to.

> However, her testimony - - that was on the close - - her testimony, however, on her direct, which was so positive that she even mentioned something about a blemish that she recalled and she could see that day from the stand. A blemish somewhere on his face.

On cross-examination, trial counsel testified that when Petitioner was taken into custody, the police already had a witness to whom they were showing photo arrays, and his co-defendant was in custody talking to police. They also had a weapon and proceeds from a robbery. Trial counsel pointed out that the only difference between the statement by Petitioner and his co-defendant was who had the gun. He said: "In my consultations with Mr. Means, he advised me he did everything that he said that he was accused of doing, except holding the gun, criminal responsibility of another, I consider it my job to make sure that the state crossed all the t's, dotted all the i's, filled in the blanks."

Petitioner testified that Ms. Fredrickson identified his co-defendant as the gunman, which was not presented at trial. He said that according to one of the documents furnished in discovery, Ms. Fredrickson called police and said that "she saw a picture in the paper that looked similar to the suspect. The name was Enrico Marshall." Petitioner testified that the pistol was not in plain view at the time of his arrest because it was inside the carpet under his gas and brake pedal. He also said that there was no reason for the police to "hassle" him. Petitioner testified that he told trial counsel that police had no reason to approach him and that the evidence should be suppressed.

Petitioner testified that the serial number on the gun found in his car did not match the serial number of the gun in the police report. He said that it differed by three numbers rather

than two.  However, he admitted that at trial, Officer Pike testified that the gun looked similar to the gun that he found.  Petitioner claimed that he was brought in for questioning about a forgery; however, police then began questioning him about the robberies.

## III.  Standard of Review

Initially, we note that although not raised by either party, the record in this case is not complete.  The transcript of the post-conviction hearing that was included in the record on appeal indicates that there was an earlier hearing during which Petitioner testified.  During the second hearing, Petitioner's counsel makes the following statement to the post-conviction court:

> If Your Honor, please, this is just a continuation of the Courtney Means petition, versus the State of Tennessee, wherein I was appointed.  And Mr. Means has testified and we have concluded our proof in chief at the last hearing, but you know in preparing for the hearing today there may be some omitted questions that I wanted to go over with Mr. Means.  But, to keep some continuity in the record if we could go ahead and let Mr. Hall testify, then that might expedite it, because, I wanted to get into evidence maybe through Mr. Hall.  But I am sure Your Honor would give me an opportunity to put on more proof.

A transcript of Petitioner's earlier testimony was not included in the appellate record. It is well settled that when a party seeks appellate review, it has a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal.  *See State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993) (holding failure to include transcript precludes appellate review); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983).  Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue, and the trial court's ruling is presumed correct.  *See State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).  Because the necessary relevant material is not included in the record, we decline to consider the merits of the issues.  *See* Tenn. R. App. P. 24(b).  Accordingly, the issues are waived.  However, in the event of further review, we will briefly address Petitioner's claims, in light of the limited proceedings in the record.

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence.  T.C.A. § 40-30-210(f). The trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness.  *Fields v. State*, 40 S.W.3d

450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id*.; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In cases involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

## IV. Unconstitutional Search and Seizure

Petitioner argues that the search of his car and seizure of the gun was unconstitutional. He claims that he was originally arrested for passing a stolen check and that the officers "searched the vehicle only for the reason that the appellant might be involved in cashing a stolen check" rather than being involved in the robberies.

The post-conviction court found that the officers in this case had probable cause to search Petitioner's car because the car matched the description of the vehicle involved in several robberies in the area. As noted by the post-conviction court, the "automobile

exception" allows police officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 283-84, 69 L. Ed. 2d 543 (1925); *State v. Leveye*, 796 S.W.2d 948 (Tenn. 1990). "Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Hemming*, 975 S.W.2d 290, 294 (Tenn. 1998).

This finding is supported by the evidence presented at the post-conviction hearing. Trial counsel testified that police were called to a check cashing business because someone was attempting to cash a stolen check. An officer then saw a car fitting the description of a vehicle involved in a number of robberies that had occurred over the past few days in that area of town. When the officer approached the vehicle and asked Petitioner to step out, he saw the pistol grip of a weapon. It is clear from the record that police had probable cause to search Petitioner's vehicle. Petitioner is not entitled to relief on this issue.

## V. Prior Identification

Petitioner contends that trial counsel was ineffective for failing to file a motion to suppress the identification by one of the victims. He essentially argues that the identification from a photographic array was impermissibly suggestive because the victim had previously seen a photograph in the newspaper of a person that she said looked similar to Petitioner.

In considering this issue, the post-conviction court held that while the victim did see a photograph of Petitioner in the newspaper, "she stated at that time that the man in the newspaper photograph looked similar to the person who robbed her." The court further noted that the victim made a positive identification of Petitioner at trial, and there was no "substantial likelihood of misidentification." Although trial counsel, in hindsight, wished that he had asked the victim about her identification of Petitioner, he said that her identification at trial "was so positive that she even mentioned something about a blemish that she recalled and she could see that day from the stand. A blemish somewhere on his face."

The fact that the victim may have seen a photograph in the newspaper that she thought looked similar to the person who robbed her does not in itself show that the identification was impermissibly suggestive. "The rule is that constitutional due process is violated if a pretrial identification is influenced by suggestiveness by police officers to such a degree as to render the identification unreliable." *State v. Shanklin*, 608 S.W.2d 596, 598 (Tenn. Crim. App. 1980). In *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972), the United States Supreme Court adopted a two-part test to assess the validity of a pretrial identification. A court must determine (1) whether the procedure used to obtain the identification was

unduly suggestive; and (2) if the identification was unduly suggestive, the court must determine, under the totality of the circumstances, whether the identification is nevertheless reliable. *Id.* At the post-conviction hearing, there was no evidence presented that the victim's identification of Petitioner was influenced by police or that the procedure used to obtain the identification was unduly suggestive. *In Bishop v. State*, 582 S.W.2d 86, 91 (Tenn. Crim. App. 1979) this Court held that there was no due process violation because there was no state action where a witness first identified defendant based on a single picture that appeared in a local newspaper. Likewise, in *State v. Howard Walter Thomas*, E2003-02090-CCA-R3-CD, 2005 WL 735040, at *18 (Tenn. Crim. App., Mar. 30, 2005)(app. Denied Oct. 10, 2005), we held that there was no state action when the "friend of an acquaintance" and not a law enforcement official sent the witness a newspaper photograph of the defendant. We conclude that Petitioner has not shown that trial counsel's performance was deficient or that he was prejudiced by any alleged deficiency. Petitioner is not entitled to relief on this issue.

## VI. Statements to Police

Petitioner argues that trial counsel rendered deficient performance for failure to file a motion to suppress his statements to police because there was an unreasonable delay in charging him. He asserts that he was detained for "approximately 12 hours during which period of time he gave the statements." Petitioner alleges that the detention was for the "specific purpose of securing evidence" against him.

Concerning this issue, the post-conviction court held that trial counsel's actions did not fall below an objective standard of reasonableness based on testimony by trial counsel at the post-conviction hearing. At the hearing, trial counsel testified that Petitioner made three statements to police, and if he thought "there was a sliver of ground" to suppress the statements, he would have filed a motion to suppress. He thought that police had probable cause to question Petitioner about the robberies at the time of the statements. He noted that when Petitioner was taken into custody, the police already had a witness to whom they were showing photo arrays, and his co-defendant was in custody talking to police. Petitioner told counsel that he was not threatened, promised anything, nor coerced and that his statement was given freely and voluntarily. Trial counsel also testified that Petitioner told him that he was advised of his right "generally at the scene," and he was formally advised when he was brought into the interview room and when the statements were reduced to written form.

"The Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to the extended detention of an individual after a warrantless arrest." *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (*citing Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)). A judicial determination of probable cause is generally

considered "prompt" if it is made within forty-eight hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-56, 111 S. Ct. 1661, 1670, 114 L. Ed. 2d 49 (1991). "The issuance of a valid arrest warrant satisfies the requirement that there must be a judicial determination of probable cause for extended detention." *Carter*, 16 S.W.3d at 766. However, not all probable cause determinations pass constitutional muster even if determined within forty-eight hours of the accused's warrantless arrest. *McLaughlin*, 500 U.S. at 56, 111 S. Ct. at 1670. As the Court noted,

> [s]uch a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.

*Id*.; *see also State v. Huddleston,* 924 S.W.2d 666, 676 (Tenn. 1996).

The record in this case reflects that there was probable cause for Petitioner's arrest, and he has failed to show that there was any unreasonable delay in charging him. The twelve-hour delay does not exceed the forty-eight hour threshold set forth in *McLaughlin*, and Petitioner has not met his burden of establishing a Fourth Amendment violation. Petitioner has failed to show that trial counsel's performance was deficient by failing to raise this issue prior to trial.

## VII. Introduction of the Gun into Evidence

Petitioner complains that trial counsel was ineffective for failing to realize that there was a discrepancy in the serial number of the gun introduced at trial and the one in the police report and by failing to bring this discrepancy to the jury's attention. The post-conviction court held that the serial number discrepancy would not have made a difference in the outcome of the trial. The court noted that at trial, the officer testified that it was the gun found in the car. At the post-conviction hearing, trial counsel testified he was unaware that the serial number of the weapon introduced at trial was different than the serial number of the gun seized by police during the search of Petitioner's car. He said it appeared that two of the numbers were transposed. Trial counsel said the witnesses at trial testified that the gun was similar to the gun they saw used during the robberies. No one testified that it was the gun used to rob them.

We conclude that Petitioner has failed to show that trial counsel's assistance fell below the acceptable standards nor does the record preponderate against the trial court's finding that Petitioner was not prejudiced by any aspect of his trial counsel's assistance

because the serial number discrepancy would not have affected the outcome of the trial. The evidence against Petitioner at trial was strong. One of the victims identified Petitioner from a photo array, and she positively identified him at trial. Additionally, all of the witnesses described Petitioner's vehicle as one similar to the getaway vehicle used in the robberies. None of the victims testified that the gun introduced at trial was the one used to rob them. *State v. Means*, 2004 WL 1323260, at *1-2.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE