# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 26, 2011 Session

## STATE OF TENNESSEE v. BRYANT KELLY PRIDE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S50700    R. Jerry Beck, Judge**

---

**No. E2010-01623-CCA-R3-CD - Filed November 22, 2011**

---

A Sullivan County jury convicted the Defendant, Bryant Kelly Pride, of two counts of the sale of 0.5 grams or more of cocaine and two counts of the delivery of 0.5 grams or more of cocaine. The trial court sentenced the Defendant to serve an effective sentence of thirty-six years in the Department of Correction. On appeal, the Defendant contends that: (1) there is insufficient evidence to sustain his convictions, (2) the trial court erred when it denied the Defendant's motion to dismiss the indictments for the State's failure to provide the Defendant a speedy trial, (3) the trial court improperly allowed the State's expert witness to testify without proper notice to the Defendant, and (4) the Defendant's sentence is excessive. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. J.C. MCLIN, J., not participating.[1]

Katherine L. Tranum, Kingsport, Tennessee for the Appellant, Bryant K. Pride.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General, and Joseph E. Perrin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

---

[1]The Honorable J.C. McLin died September 3, 2011, and did not participate in this opinion. We acknowledge his faithful service to this Court.

# I. Facts
## A. Procedural History

On May 11, 2005, a Sullivan County grand jury indicted the Defendant for two counts of the sale of 0.5 grams or more of cocaine and two counts of the delivery of 0.5 grams or more of cocaine. On January 7, 2008, the Defendant, while in federal custody filed, pro se, a motion to dismiss the indictments, alleging a violation of his constitutional right to a speedy trial. On February 18, 2010, the trial court held a hearing on the motion and denied it. A jury trial was held on February 22 and 23, 2010, following which, the jury convicted the Defendant of all of the charges. The trial court sentenced the Defendant to an effective thirty-six year sentence.

Nearly three years passed between the Defendant's indictments and the filing of his motion to dismiss in the current case because, shortly after being indicted in this case, federal authorities arrested and detained the Defendant. He was tried and convicted in federal court and then, on October 5, 2007, sentenced to life imprisonment for the federal charges.

On January 7, 2008, the Defendant, pro se, moved to dismiss the indictments in this case[2] because his right to a speedy trial had been violated. Although the Defendant retained and was represented by attorney Renfro Buddy Baird of Rogersville, Tennessee, the Defendant testified that he was unable to contact Attorney Baird about the motions for a speedy trial. After filing the motions, the Defendant incurred additional federal charges, received convictions, and the federal court sentenced him to thirty years in prison, ordering the sentence to be served concurrently with his federal life sentence. On October 26, 2009, after the conclusion of the Defendant's second federal case, authorities returned the Defendant to the Sullivan County Jail.

On December 15, 2009, the Defendant appeared in court and expressed his desire for a speedy trial. On January 21, 2010, the Defendant and Attorney Baird appeared before the court, and Attorney Baird received permission to withdraw from the case. The trial court appointed attorney Katherine L. Tranum to represent the Defendant. Ms. Tranum represented the Defendant at the February 18, 2010, hearing on the Defendant's motion to dismiss, at his trial on these charges, and was the attorney of record in this appeal.

---

[2] The Defendant filed two pro se motions, one of which related to this case. The other motion related to a separate set of charges and this Court addressed the Defendant's appeal of that case in *State of Tennessee vs. Bryant K. Pride*, No. E2010–02214–CCA–R3–CD, 2011 WL 4424354 (Tenn. Crim. App., Sept. 23, 2011).

## B. Hearing on Motion to Dismiss Indictments

At the hearing on the Defendant's motion to dismiss indictments, the parties presented the following evidence: The Defendant testified that he was currently incarcerated at Sullivan County jail. Before his Sullivan County incarceration, he was held on federal charges at Big Sandy, Inez, Kentucky, Coleman, Florida USP, and Abingdon, Virginia. The Defendant testified that he retained Renfro Buddy Baird to represent him on these charges. On March 7, 2007, the Defendant was transferred to Abingdon, Virginia, on federal charges, charges for which he was ultimately convicted and sentenced on October 5, 2007, to life without parole. The Defendant recalled that, after the conclusion of his federal case, he filed a pro se motion in this case requesting a fast and speedy trial. Additionally, he sent copies of this motion to the assistant district attorney assigned to his case and Attorney Baird. The Defendant testified that he attempted to contact Attorney Baird multiple times both before and after he filed the pro se motion, but he was unable to contact him either through mail or by telephone.

The Defendant testified that, after filing the pro se motion for a fast and speedy trial, he was indicted on additional federal charges. The Defendant pled guilty to the second set of federal charges, and was sentenced to thirty years to run concurrent with his life sentence. This second federal case concluded in March 2009, and prison officials returned the Defendant to Sullivan County on October 26, 2009. The Defendant said that, upon his return to Sullivan County, he told Attorney Baird on at least two occasions that he wanted to proceed on the motion for a fast and speedy trial. Soon thereafter, however, Attorney Baird requested that the trial court allow him to withdraw from the Defendant's case. The trial court granted the attorney's request and appointed Katherine Tranum, who requested a hearing date for the speedy trial motion and a trial date.

On cross-examination, the Defendant agreed he had a prior criminal record, which included the following convictions: possession with intent to distribute 50 grams or more of cocaine, conspiracy to distribute 50 grams or more of cocaine, manufacture of cocaine, breaking and entering, possession with intent to sell or deliver cocaine, driving while license revoked, assault on a law enforcement officer, and carrying a concealed weapon.

The Defendant agreed that Attorney Baird represented him at the time he filed his pro se motion for a speedy trial. The Defendant also agreed that Attorney Baird never filed a motion for speedy trial on the Defendant's behalf. The Defendant testified that he was out of jail on bond for the charges in this case when he was arrested for additional Sullivan County drug-related offenses, which included possession of over 26 grams of cocaine for sale or delivery, possession of marijuana, and criminal conspiracy to possess more than 26 grams of cocaine for sale or delivery within 1000 feet of a school. The Defendant was once again

3

released from jail on bond and, thereafter, authorities arrested him for federal charges in Virginia. The Defendant agreed that he had been continuously incarcerated since that time.

The Defendant testified that, after retaining Attorney Baird to represent him on the charges in this case, Attorney Baird obtained a trial date of February 13, 2006. The Defendant did not remember whether his first trial date was cancelled after he told Attorney Baird he would accept the State's plea offer. The Defendant remembered that his next trial date was set for October 31, 2006, and then again for February 27, 2007, but Attorney Baird was ill the 27th. The trial court re-set the trial date for March 26, 2007, but, by that time, the Defendant was in federal custody for offenses committed while the Defendant was out on bond for the Tennessee cases. In January 2008, the Defendant filed his motion for a speedy trial. Due to a second set of federal charges against the Defendant, the Defendant was appointed federal counsel, who contacted the assistant district attorney assigned to the Sullivan County cases and attempted to negotiate a settlement for all of the Defendant's cases, both federal and state. The Defendant agreed that, at the time, he was aware his federal counsel was not pursuing a speedy trial but was attempting to negotiate a settlement of the cases.

Rebecca Cruff, Administrative Assistant to the District Attorney General, testified that she was responsible for matters of extradition and detainers for the Sullivan County District Attorney's Office. Cruff testified that she reviewed the Defendant's pro se motion for a speedy trial and determined that it had no legal significance under the Interstate Compact Act on Detainers because it failed to meet the requirements. Cruff explained that the document did not identify an attorney, provide a computation of the Defendant's jail time, include an offer of custody from the facility where the Defendant was incarcerated, and provided no parole eligibility date. When the office first received this letter, Cruff conveyed this to the assistant district attorney assigned to the case. Further, Cruff discovered that the federal government detained the Defendant at that time on his first set of federal charges. Cruff testified that she requested a detainer on the Defendant while he was still being held on the federal charges, but she explained that defendants are not available for transfer until after the conclusion of their federal charges and their transfer to a federal institution. Cruff testified that, once the Defendant had disposed of his first set of federal charges, he was transferred to a federal institution in Kentucky. She contacted the penitentiary in Kentucky, and she was told that the detainer issued while the Defendant was in Virginia had not transferred to Kentucky. Cruff then learned that the Defendant had additional federal charges and was to be transferred back to Virginia pursuant to the United States Marshal's writ of *ad prosequendum*. After the conclusion of the Defendant's second set of federal charges, Cruff again filed the necessary paperwork to transfer the Defendant to Sullivan County, but learned that the Defendant was not being returned to Kentucky but was being transferred to Florida. Once the Defendant arrived at the Florida penitentiary, a writ of *habeas corpus ad*

4

*prosequendum* was served on the proper authorities, and the Defendant was returned to Sullivan County.

Renfro Blackburn Baird, III, testified that he had practiced criminal law for almost twenty-three years. Attorney Baird said that the Defendant retained him on both this case and the second set of charges the Defendant had pending in Sullivan County. Attorney Baird recalled that the trial for the first set of charges was originally set for February 13, 2006; however, the Defendant indicated he would accept the State's plea offer, so the Defendant's case was removed from the trial docket. In May 2006, the Defendant decided he wanted to go trial, so the trial court set a second trial date for October 31, 2006. On this date, the trial court was in the midst of an ongoing jury trial, so the Defendant's trial date was reset for February 27, 2007. Attorney Baird testified that on this third trial date he was ill, so the trial was reset for March 26, 2007. Attorney Baird testified that, by March 26, 2007, the Defendant was in federal custody and held in another state.

Attorney Baird testified that the attorney representing the Defendant on the federal charges contacted Attorney Baird to notify him that the Defendant had been convicted on the federal charges and received a life sentence. Attorney Baird testified that he was unaware that the Defendant filed pro se motions requesting a fast and speedy trial in Sullivan County until the District Attorney's office provided him notice. Attorney Baird said that he did not initially adopt these pro se motions and waited until late in 2009 before doing so. He explained his decision to not adopt the motion was based upon his belief that there was not a legitimate or legal basis upon which to file such a motion. Attorney Baird said that, based upon his discussions with the Defendant's federal counsel, he believed a negotiation was worked out and the Defendant would enter a guilty plea upon his return to Sullivan County.

Based upon this evidence, the trial court denied the Defendant's motion to dismiss the indictments for the State's failure to provide the Defendant a speedy trial.

### C. Trial

At the Defendant's trial, the parties presented the following evidence: Darren Feathers, a Bristol Tennessee Police Department officer, testified that, on March 7, 2005, he was assigned as an investigator with the Street Crimes Unit. Officer Feathers recalled that on that night he went, in an undercover capacity, to a pre-arranged location to buy cocaine from the Defendant. He took with him previously photocopied money for use during the drug sale. Other officers were present in separate vehicles at the scene to "rescue" Officer Feathers if necessary. Upon arriving at the pre-arranged location, a Hardee's restaurant, Officer Feathers called the Defendant to let him know he had arrived. The Defendant told Officer Feathers that he had driven through the Hardee's parking lot, not seen him, and left.

5

He instructed Officer Feathers to meet him at another location, a Chevron gas station at exit 66 off of I-81 in Sullivan County, Tennessee.

Officer Feathers testified that, when he arrived at the Chevron gas station, he parked and waited for the Defendant to arrive. Officer Feathers observed a blue Lexus pull into the Chevron gas station parking lot and park. Officer Feathers walked over to the passenger door of the Lexus and got into the vehicle but left the car door open. The Defendant was the only person in the vehicle, and he dropped a "Baggie corner" of cocaine into a Hardee's cup. Officer Feathers laid $200 down, picked up the Hardee's cup, and exited the vehicle. Police authorities submitted the "Baggie corner" to the Tennessee Bureau of Investigation ("TBI") for evidence processing. Officer Feathers testified that he obtained the license tag number of the Lexus as the Defendant drove away and later determined that the registered owner of the Lexus was the Defendant. Officer Feathers testified that shortly after the Defendant left the Chevron gas station parking lot, he called Officer Feathers and instructed him to refer to cocaine in the future as "CDs or DVDs." Further, the Defendant told the officer "not to tell anybody about our business."

Officer Feathers testified that on March 23, 2005, he again called the Defendant and requested "a DVD" referring to "two eight balls of cocaine." This time the two men arranged to meet at a McDonald's restaurant, and the Defendant drove a red Lincoln Navigator. Officer Feathers again approached the passenger side door and got into the vehicle. The Defendant was the only person in the car, and he told the officer that he was driving a different car because "you can't be too careful." Two "Baggie corners" of cocaine were lying on the cup holder area of the console. Officer Feathers laid $400 of previously photocopied money down, picked up the cocaine, and exited the vehicle. These "[B]aggie corner[s]" were also submitted to the TBI for evidence processing. Officer Feathers again identified the Defendant as the registered owner of the Lincoln Navigator through the license tag number.

On cross-examination, Office Feathers agreed that during the March 23 drug sale he wore a concealed audio and video recording device.[3] During the March 8 drug sale, he wore only an audio recording device.

Clayton Hall, a TBI forensic scientist, testified as an expert witness in the field of drug identification. Agent Hall analyzed the "rock-like substance," weighing 2.8 grams, received during the first drug sale, and determined it contained a cocaine base. Agent Hall also analyzed the substance in each of the two baggies received during the second drug sale. One

---

[3] In subsequent testimony it is revealed that, as to the March 23 drug sale, there was an unknown malfunction with the equipment and the transaction was not recorded.

6

of the bags contained approximately 2.8 grams of rock-like substance while the other bag contained approximately 2.6 grams of rock-like substance. Hall analyzed both substances, revealing a cocaine base for each.

Charles Thomas, a Bristol Tennessee Police Department officer testified that he was present at both drug sales and observed both the blue Lexus and the red Lincoln Navigator during each drug transaction. Officer Thomas testified that the police department later seized both of these vehicles. Officer Thomas observed the second drug transaction on a monitor connected to the recording equipment on Officer Feathers. He testified to the events of the transaction consistent with Officer Feathers' previous testimony. Officer Thomas identified the Defendant as the individual in the driver's seat of the vehicle during the second drug transaction.

## D. Sentencing

At the sentencing hearing, the trial court first noted that, for the March 8 drug sale, the jury convicted the Defendant on count one of sale of 0.5 grams or more of cocaine and on count two of delivery of 0.5 grams or more of cocaine and, for the March 23 drug sale, the jury convicted the Defendant on count three of one count of sale of 0.5 grams or more of cocaine and on count four of delivery of 0.5 grams or more of cocaine. Because on the individual dates both of the convictions arose from the same course of conduct, the trial court merged counts 1 and 2 and merged counts 3 and 4. The State offered into evidence the presentence report and certified copies of the Defendant's prior convictions. Based upon the prior convictions, the trial court found the Defendant was a Range II, Multiple Offender and that the Defendant had a "substantial number of prior convictions other than those used to establish his range."

Chuck Kimbril, a TBI narcotics officer, testified that he worked with the Drug Enforcement Administration ("DEA") in an investigation termed, "Stop the Music." This investigation revealed the offenses for which the Defendant was convicted in federal court. Officer Kimbril explained that the Defendant's conspiracy conviction was based upon a conspiracy involving approximately fifty-three defendants who distributed approximately twenty kilograms of cocaine per month for almost three years. Officer Kimbril identified the Defendant as "at the top of the chain," in this criminal organization. Officer Kimbril explained that the initial investigation centered around a music production company, "Can't Stop Records," which was incorporated inside the State of Tennessee by Derrick Lamont Evans and the Defendant. Documents of incorporation listed the Defendant as the executive vice president and chief executive officer of Can't Stop Records. During the course of the investigation, officers learned that Can't Stop Records was a shell corporation established for the purpose of trafficking drugs and laundering money.

Based upon the evidence presented at the sentencing hearing, the trial court sentenced the Defendant to eighteen years for each of his convictions. The trial court then made a finding that the Defendant was a professional criminal, who had knowingly devoted his life to criminal acts, and that the Defendant had an extensive history of criminal activity. Based uon this finding, the court ordered the two eighteen-year sentences to be served consecutively, for an effective sentence of thirty-six years. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant raises three issues on appeal: (1) that there is insufficient evidence to sustain his convictions; (2) the trial court erred when it denied the Defendant's motion to dismiss the indictments for the State's failure to provide the Defendant a speedy trial; (3) the trial court improperly allowed the State's expert witness to testify without proper notice to the Defendant; and (4) the Defendant's sentence is excessive.

### A. Sufficiency of the Evidence

The Defendant asserts that the evidence presented at trial was insufficient to support the jury's conclusion that he committed two counts of sale and delivery of over 0.5 grams of cocaine. The State responds that the evidence proved that the Defendant sold approximately 8.2 grams of cocaine to a police officer on two separate occasions.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (*citing State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App.1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the

witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (*citing Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (*citing State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of the sale and delivery of more than 0.5 grams of cocaine. Tennessee Code Annotated section 39-17-417 provides that "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance [or] [s]ell a controlled substance[.]" T.C.A. § 39-17-417(a)(2), (3) (2010).

In considering the evidence in the light most favorable to the State, the record shows that the Defendant, driving a blue Lexus, met an undercover officer at a Chevron gas station on March 7, 2005. At this location, which the Defendant chose, he sold and delivered 2.8 grams of cocaine to the undercover police officer in exchange for $200. On a separate occasion, on March 28, 2005, the Defendant, this time driving a red Lincoln Navigator, met the same undercover officer at a McDonald's restaurant to sell and deliver 2.8 grams and 2.6 grams of cocaine to the undercover officer in exchange for $400. Both the undercover officer and another officer conducting surveillance of the drug sales identified the Defendant as the person who delivered and sold the cocaine. Further, the license tag numbers from the two vehicles the Defendant drove to the drug sales identified him as the registered owner. This evidence sufficiently supports the jury's finding the Defendant guilty of two counts of the sale of more than 0.5 grams of cocaine and the two counts of delivery of more than 0.5 grams of cocaine. The Defendant is not entitled to relief as to this issue.

**B. Motion to Dismiss the Indictments**

The Defendant asserts that the trial court erred when it denied his motion to dismiss his indictment because the State violated his right to a speedy trial due to negligence. The State responds that, because the Defendant was responsible for the delay, the trial court properly denied the Defendant's motion to dismiss the indictments.

The Sixth Amendment to the United States Constitution and the Tennessee Constitution provide a defendant with the right to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. The purpose of the right to a speedy trial is to protect defendants from "oppressive pre-trial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992).

In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court developed a four-prong balancing test to determine whether a defendant has been deprived of the right to a speedy trial. The four factors considered are the length of the delay, the reasons for the delay, the defendant's assertion of the right, and the prejudice suffered by the defendant. *Id.* at 530. The delay must approach one year to trigger the *Barker v. Wingo* analysis, with the line of demarcation depending on the nature of the case. *State v. Utley*, 956 S.W.2d 489, 494 (Tenn. 1997).

In this case, the Defendant was indicted in May 2005, and the Defendant's trial was in February 2010. This delay warrants a further examination of the specific circumstances of this particular case in light of the remaining three *Barker* factors.

The next factor to be considered is the reason or reasons for the delay, which should be "neutral." *Barker*, 407 U.S. at 531. In *State v. Wood*, our Supreme Court identified four possible reasons for delay, they include:

(1) Intentional delay for tactical advantage or to harass the defendant;

(2) bureaucratic indifference or negligence;

(3) necessary delay for the fair and effective prosecution of the case; and

(4) delay agreed to or caused by the defendant.

*State v. Wood*, 924 S.W.2d 342 (Tenn. 1996). In this case, the Defendant does not contend that the delay was due to the State's intentional act to gain advantage or harass him. The

10

Defendant asserts in his brief that the reason for the delay is "due to the negligence of the State." The Defendant appears to exclude the time period of his federal incarceration, narrowing his complaint to the time between the indictment and when the Defendant was arrested on federal charges, May 2005 to March 2007. The State contends that the delay was agreed to, or caused by, the Defendant.

Our review of the record reveals that Attorney Baird represented the Defendant at his original February 13, 2006 trial date. As this date approached, the Defendant informed Attorney Baird he intended to accept the State's plea offer, so this trial date was removed from the trial docket. Thereafter, the Defendant changed his mind and requested a new trial date, which was set for October 31, 2006. Because the trial court was in the middle of an ongoing trial on October 31, 2006, the Defendant's trial was continued until February 27, 2007. On February 27, 2007, Attorney Baird was ill and unable to be present in court for the trial. The date for the trial was moved to March 26, 2007, by which time the Defendant had been arrested for federal crimes in Virginia and was in federal custody.

As for the Defendant's role in the continuances, we conclude that the Defendant's decision to accept a plea offer and then his subsequent change of mind, as well as his federal incarceration, indicates that the Defendant was partially responsible for the continuances. Two continuances, resulting from the trial court's ongoing trial and defense counsel's illness, can not be attributed to the State's "negligence." In our view, the reasons for the delay weigh against the Defendant.

A defendant's assertion of his speedy trial right, while not required, is "entitled to strong evidentiary weight." *Barker*, 407 U.S. at 531. In this case, the Defendant filed pro se motions asserting his right to a speedy trial while detained by federal authorities in January 2008. These *pro se* motions did not comply with the Interstate Compact on Detainers, and, because the Defendant was under federal custody, the State could not try the Defendant on the state charges until his federal charges were resolved. Subsequently, the Defendant received additional federal charges, continuing his unavailability to the State for prosecution. In March 2009, the second set of federal charges were disposed of and, subsequently, federal officials transferred the Defendant to a federal prison in Florida where the State filed the necessary paperwork to return the Defendant to Sullivan County, Tennessee, for prosecution. The federal prison then released the Defendant to the State of Tennessee's custody on October 26, 2009. It is unclear from the record whether Attorney Baird adopted the Defendant's motion for a speedy trial in December 2009 or January 2010, nonetheless, the Defendant's trial was held in February 2010.

Finally, we consider the prejudice to the Defendant caused by the delay in light of the interests protected by the speedy trial right. *Barker*, 407 U.S. at 532. The U.S. Supreme

Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id*. The Defendant does not assert a specific prejudice resulting from the delay. Our review of the record indicates no prejudice to the Defendant from the delay.

Accordingly, we conclude that, while the delay was sufficient to trigger a *Barker* inquiry, the Defendant has failed to establish a meritorious claim for a speedy trial violation. Thus, the trial court did not err when it denied the Defendant's motion to dismiss the indictments on this basis. The Defendant is not entitled to relief on this issue.

### C. Motion to Exclude the State's Expert Witness

The Defendant argues that the trial court erred when it denied his motion to exclude testimony from the State's expert witness, Clayton Hall, because the State failed to include Hall on its witness list. The State responds that the Defendant received two T.B.I. forensic chemistry reports before trial, and each report named Hall as the forensic examiner of the cocaine submitted to the T.B.I. in this case. The State argues that those T.B.I. reports negate any argument by the Defendant that Hall was a "surprise" witness for the State.

Tennessee Code Annotated section 40-17-106 directs the State to list "the names of such witnesses as [it] intends shall be summoned in the cause" on the charging indictment. The purpose of this statute is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the indictment. However, this duty is merely directory, not mandatory. *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992). The State's failure to include the name of a witness on the indictment will not automatically disqualify the witness from testifying. *Id*. A defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage. *Id*.; *State v. Baker*, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987). The determination of whether to allow the witness to testify is left to the sound discretion of the trial judge. *State v. Underwood*, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984).

The record shows that, at least one month before the Defendant's trial, the Defendant received the TBI toxicology report wherein Clayton Hall's name was signed on the report as the forensic scientist who conducted the analysis of the cocaine. Thus, the Defendant was aware that Hall was likely to be a witness and, based upon the toxicology report, aware of the nature of Hall's testimony. Ordinarily, a witness is not disqualified from testifying even though his name does not appear on the indictment. *State v. Gilbert*, 612 S.W.2d 188 (Tenn. Crim. App. 1980). This is particularly so when the record shows that the defendant was not surprised or handicapped in the preparation of his defense. *Cook v. State*, 466 S.W.2d 530

(Tenn. Crim. App. 1971). This record demonstrates that the Defendant was not surprised, handicapped, or prejudiced by the absence of Hall's name on the State's list of witnesses. Moreover, the trial court allowed the Defendant the opportunity to interview Hall prior to Hall's trial testimony. The Defendant is not entitled to relief on this issue.

### D. Excessive Sentence

The Defendant argues that the trial court improperly imposed consecutive sentencing in light of the Defendant's existing life sentence in federal prison. The State responds that, because the Defendant is a professional criminal who has knowingly devoted his life to criminal acts and has an extensive criminal history, the trial court properly imposed consecutive sentencing.


Consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A trial court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the following seven factors exists:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

13

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b)(1)-(7) (2010). These criteria are stated in the alternative; therefore, only one need exist in order to impose consecutive sentencing.

In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), 103(2) (2010); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In the present case, the trial court made a finding that the State had produced sufficient evidence of two factors supporting consecutive sentencing: factor (1), that "[t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;" and factor (2), that "the defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(1) and (2) (2010). The trial court then ordered the Defendant's two eighteen-year sentences for the sale of more than 0.5 grams of cocaine to run consecutively.

Our review of the record reveals that the Defendant spent two years, prior to his federal incarceration, at the head of a criminal organization that involved fifty-three individuals and the sale of over twenty kilograms of cocaine per month. The Defendant was significantly involved in the operation of a shell corporation used for drug trafficking and money laundering. The Defendant's legitimate work history was sparse, indicating that he relied upon criminal activity as a significant source of his income. Finally, the presentence report shows numerous federal and state convictions for drugs, assault, carrying a concealed weapon, and traffic offenses.

Based upon this evidence, the trial court did not err in ordering the Defendant's sentences to run consecutively to one another. There was ample evidence in the record supporting each of the two factors relied upon by the trial court to order consecutive sentencing in this case. Thus, the Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the evidence is sufficient to sustain the Defendant's convictions. The trial court properly denied

the Defendant's motion to dismiss the indictments for the State's failure to provide the Defendant a speedy trial, properly allowed the State's expert witness to testify at trial, and properly sentenced the Defendant in this case. As such, we affirm the judgments of the trial court.


_____

ROBERT W. WEDEMEYER, JUDGE